# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JABARI NAZIR BEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| OAKTON COMMUNITY COLLEGE, | ) | |
| | ) | |
| Defendant. | ) | No. 14 C 06655 |
| | ) | |
| | ) | No. 14 C 07171 |
| SIMEON WASHA AMEN RA, | ) | |
| | ) | Judge John J. Tharp, Jr. |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BNSF RAILWAY COMPANY and MATTHEW ROSE, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

For the reasons stated below, in Case No. 14 C 06655, Defendant Oakton's motion to dismiss [21] is granted. Because no amendment could cure the legal deficiencies in Bey's complaint, no further amendment will be permitted, and the dismissal of his complaint is with prejudice. In Case No. 14 C 07171, Defendant BNSF's motion to dismiss [13] is granted as to the discrimination claims and as to all claims against Defendant Rose, but denied as to the retaliation and harassment claims.

## STATEMENT

In these unrelated but similar cases, the plaintiffs bring claims of employment discrimination based on national origin and religion. According to the operative complaints,[1] the plaintiffs, Jabari Nazir Bey (formerly known as Ryan Kendricks) and Simeon Washa Amen Ra (formerly known as Simeon Lewis)—herein, the Court will use the names by which the plaintiffs identify themselves[2]—are of the nationality "Aboriginal-Indigenous Native American / Moor"[3]

---

[1] *Lewis v. BNSF Railway*, No. 14 C 07171, Complaint, Dkt. # 1 (Sep. 15, 2014); *Bey v. Oakton Community College*, No. 14 C 06655, Amended Complaint, Dkt. # 19 (Dec. 10, 2014).

[2] The Court does so as a matter of courtesy to the plaintiffs; no ruling or opinion as to the propriety of the plaintiffs' use of these names is intended.

and are non-citizen "nationals" of the United States. Both of them accuse their employer or former employer of discriminating against them by failing to officially record their citizenship as "U.S. National" and persisting in identifying them by their Social Security Numbers (SSNs) and legal names despite their objections. Bey further alleges that his termination was discriminatory, and Amen Ra asserts additional claims of retaliation and harassment. The defendants in both cases have moved to dismiss.

The facts as alleged in the complaints are taken as true for purposes of these motions. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013). The documents attached to the plaintiffs' complaints are part of the pleadings and may also be considered. *See* Fed. R. Civ. P. 10(c); *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). If an exhibit contradicts the allegations in the complaint, the exhibit is controlling. *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013). The plaintiffs' factual allegations are set forth below.

### Plaintiff Amen Ra (a.k.a. Lewis)

In February of 2010, Amen Ra asked his employer, BNSF, to correct the "company's data base" with respect to his ethnicity (from African American to Indigenous Native American) and citizenship status (from U.S. citizen to U.S. national). He further asked the company to discontinue identifying him by his SSN and remove it from the "data base." In April, his ethnicity was updated to Native American, but his citizenship was not changed, and he was notified that the company would continue to use his SSN. Amen Ra repeated his requests in correspondence with various human resources personnel in the years that followed, but his requests were denied. In April of 2013, he submitted a "final request" by certified mail that BNSF cease using his SSN. The request was denied.

In Count I of his complaint, Amen Ra claims that BNSF discriminated against him on the basis of "citizenship / nationality" by failing to record his citizenship as "U.S. national." Count II alleges a claim of discrimination based on religion, grounded in BNSF's refusal to stop using the former Simeon Lewis's SSN. In Count III, Amen Ra alleges unlawful retaliation, claiming that he was denied a promotion from brakeman to conductor based on the faulty premise that he had not obtained required certifications. Finally, in Count IV, the plaintiff claims that he was subject to unlawful harassment when less-senior employees were promoted instead of him and a "+" mark was placed next to his name on a publicly posted list to ensure that he was not permitted to work as a conductor.

---

[3] Other iterations of the plaintiffs' nationality used in their complaints and the supporting documents are (1) minister of the International Indigenous Society Choctaw (or Chocktaw Cherokee) Tribe; "One of We the People, an indigenous inhabitant traveler"; and (3) Aboriginal Native American.

**Plaintiff Jabari Nazir Bey (a.k.a. Kendricks)**

Bey worked for Oakton Community College as a public safety officer from April 2007 until August 2014. In mid-2010, Bey notified Oakton of a correction in his name and national origin—"Aboriginal-Indigenous Moor/ Native American"—and, further, that it was against his "Moorish/Islamic religious beliefs" to have and use a SSN or to participate in any way in a social security program. Bey understood that Oakton was going to comply with his requests and alleges that Oakton did so for a period of time. But in November 2012, Bey was told at a meeting that Oakton would revert to using his original name, Ryan Kendricks, as well as his SSN. The next month, Bey provided Oakton with legal support for his position, and when Oakton did not yield, he filed a discrimination charge with the Illinois Department of Human Rights on March 20, 2013. Bey alleges the discrimination caused him extreme stress and anxiety, which lead to three severe anxiety attacks in late February and early March 2014, the result of which was being put on medical leave. While still on medical leave, Bey received a letter notifying him that he was terminated effective August 6, 2014.

Bey filed a charge with the IDHR, alleging "unequal terms and conditions of employment . . . because of my religion, Moorish/Islamic," "because of my national origin, Aboriginal Indigenous Moor," and "because of my citizenship status, U.S. National." In the narrative, Bey explained that the defendant had changed his name "back into my previous name" whereas other employees who legally changed their names "have been treated differently." A right-to-sue notice was issued on May 20, 2014 and is attached as an exhibit to the complaint.

Count I of Bey's amended complaint asserts that Oakton unlawfully discriminated against him based upon his national origin by failing to correctly refer to his name and national origin and by terminating him and not taking disciplinary action against "other employees engaged in identical behavior." Count II alleges that Oakton discriminated against Bey on the basis of his religion by using Ryan Kendricks' SSN to identify him. The Amended Complaint also adds allegations that Bey was harassed and threatened "for correcting [his] nationality or national origin name" or "for religious beliefs," although he does not identify the nature of any such harassment or who perpetrated it.[4] *See* Am. Compl., Dkt. # 19 ¶¶ 23 32, 39. An attached

---

[4] To the extent that Bey separately seeks relief for harassment or hostile work environment—which is not at all clear from the complaint—the Court agrees with Oakton that such a claim would be beyond the scope of Bey's administrative charge, and therefore not actionable in this lawsuit. *See Moore v. Vital Products, Inc.*, 641 F.3d 253, 256-57 (7th Cir. 2011). On a motion to dismiss this Court may properly consider the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice. *Olson v. Bemis Co.*, No. 14-3563, 2015 WL 5011951, at *7 (7th Cir. Aug. 25, 2015). The defendants properly submit the charge, *see* Dkt. # 22-1, in support of their motion because the right-to-sue notice was incorporated into Bey's complaint. *See* Fed. R. Civ. P. 10(c). The charge speaks only to Oakton's discriminatory refusal to use Bey's preferred name; such conduct is not like or reasonably related to the verbal harassment in Bey's "affidavit."

"affidavit of harassment," *see* Ex. C., provides some further detail, primarily of name-calling by co-workers.

## II. Discussion

To survive a motion to dismiss, a complaint must state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014). The plaintiffs must plead sufficient factual content from which the Court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Allegations in the form of legal conclusions, as well as threadbare recitals of the elements of a cause of action, supported by conclusory statements, do not suffice. *Adams*, 742 F.3d at 728. Factual, but not legal, allegations are taken as true for purposes of the motion. *Id*.

The bar for stating a claim for employment discrimination is not high. "Employers are familiar with discrimination claims and know how to investigate them, so little information is required to put the employer on notice of these claims." *Carlson v. CSX Transp., Inc*., 758 F.3d 819, 827 (7th Cir. 2014). Furthermore, *pro se* complaints are to be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94, (2007) (per curiam) ("A document filed *pro se* is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers") (citation and internal quotation marks omitted).

### A. Administrative Exhaustion (Amen Ra)

As a threshold issue, defendant BNSF contends that plaintiff Amen Ra's claims must be dismissed for failure to exhaust administrative remedies.

Exhaustion of administrative remedies is an affirmative defense that is generally not appropriate to raise in a motion to dismiss because the plaintiff has no "obligation to allege facts negating an affirmative defense in [his] complaint." *Mosely v. Board of Educ.,* 434 F.3d 527, 533 (7th Cir. 2006). Dismissal is improper if there is "nothing on the face of [the] complaint that compels a conclusion that [plaintiff] failed to exhaust." *Id.*

Here, there is nothing in the complaint indicating a failure to exhaust the Title VII claims. And (although he has no obligation to), Amen Ra contends in his response to the motion to dismiss that he did in fact exhaust. He attaches as exhibit MM1 a right-to-sue letter obtained on his administrative charge of July 3, 2013 (which is not itself attached); the letter is dated June 18, 2014—less than 90 days before the filing of the complaint in this case on September 15, 2014.

In reply, BNSF contends that Amen Ra has now pleaded himself out of court because an administrative charge filed on July 3, 2013 would not be timely (*i.e*., filed within 300 days of) as to discrimination that took place on April 10, 2010, as alleged in ¶¶ 6-7 of the Complaint. But that is only the earliest of multiple allegedly discriminatory actions that Amen Ra alleges, and

BNSF does not attempt to establish that all of the actionable discrimination or harassment occurred outside the 300-day window. *See generally Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110-120 (2002). In particular, when harassment is alleged, "[i]n order for the charge to be timely, the employee need only file a charge within 180 or 300 days [depending on whether the charge is filed with the state agency or with the EEOC directly] of any act that is part of the hostile work environment." *Id.* at 118. "It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period." *Id.* at 117. BNSF has therefore not yet established as a matter of law that Amen Ra failed to timely exhaust his administrative remedies as to all of the discriminatory conduct he alleges.

### B. National Origin Discrimination (Both Plaintiffs)

Under 42 U.S.C.A. § 2000e-2(a)(1), it is unlawful for an employer to discriminate against an employee based upon his "national origin." Both plaintiffs allege that their employers' failure to appropriately document their names, ethnicities, and/or citizenship constitutes discrimination on the basis of national origin.[5]

The defendants contend that the plaintiffs have not adequately alleged facts that could support a claim of national origin discrimination that is plausible on its face. The Court agrees. To state such a claim, the plaintiff needs to do little more than identify some discrimination suffered because of his national origin. *Cf., Carlson*, 758 F.3d at 827 [("A complaint alleging sex discrimination under Title VII 'need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her sex.'")(citing *Tamayo*, 526 F.3d 1074, 1084 (7th Cir. 2008))]. Here, however, the plaintiffs have failed to allege any facts making plausible their claim to a protected national origin or that they were discriminated against on such a basis.

As a threshold matter, the plaintiffs have failed to plausibly allege that "Aboriginal-Indigenous Native American/Moor," or any of the other variations the plaintiffs use to describe their claimed national origin, is a protected class under Title VII or any applicable civil rights statute. Although claims of "Native American" ancestry clearly suffice as the predicate for a national origin discrimination claim, *see Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.*, 154 F.3d 1117, 1120 (9th Cir. 1998), the plaintiffs do not appear to allege that they are of "Native American" origin, as that term is commonly understood. Although the plaintiffs incorporate the term "Native American" into their denomination of their putative national

---

[5] Actually, Amen Ra primarily refers to discrimination based upon "citizenship," but that is not a protected category. "Title VII does not … forbid discrimination on grounds of citizenship." *Fortino v. Quasar Co., a Div. of Matsushita Elec. Corp. of Am.*, 950 F.2d 389, 392 (7th Cir. 1991) (citing *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86 (1973)). However, irrespective of the label he uses, it is fair to read his complaint as alleging a claim of national origin discrimination. Granting the defendant's motion to dismiss solely on the ground that "citizenship" is not a protected class would be overly technical and inconsistent with the leniency afforded pro se pleadings.

origin,[6] the Court is aware of no recognized nationality known as "Aboriginal-Indigenous Native American/Moor." There are references in Amen Ra's supporting materials to the Choctaw Indian Nation, but neither plaintiff alleges that he is ancestrally of the Choctaw Nation or any other Indian tribe recognized by the United States government.[7] Rather, they appear to claim membership in the "International Indigenous Society Tribal Council," purportedly a part of the government of the "Aboriginal Republic of North America," an entity that Amen Ra claims has been formally recognized by the United States. *See* Ex. AA, Dkt. # 6 at 3. Perhaps not surprisingly, the documents attached to Amen Ra's complaint in support of that facially fanciful claim appear to be inauthentic mashups cobbled together from other materials.[8] The plaintiffs' national origin claims, then, appear not to be founded directly on claims of membership or ancestry from any native and recognized Indian tribe, but rather on their alleged affiliation with a distinct "tribal" government that purportedly exists independently of any recognized Indian Tribe. As such, it appears quite doubtful that their claim of "Aboriginal Indigenous Native American/Moor" national origin suffices as the predicate for claims of national origin discrimination.

Further, apart from their idiosyncratic use of the term "Native American," the plaintiffs provide no basis to infer that they merit protection on the basis of their national origin. The term "national origin . . . refers to the country where a person was born, or, more broadly, the country from which his or her ancestors came." *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 88 (1973). *See* 29 CFR § 1606.1 ("The [Equal Employment Opportunity] Commission defines national origin discrimination broadly as including, but not limited to, the denial of equal employment opportunity because of an individual's, or his or her ancestor's, place of origin; or because an individual has the physical, cultural or linguistic characteristics of a national origin group.").

In these cases, neither plaintiff has alleged any "country" that is his "place of origin" other than the United States; indeed, they claim to be "U.S. nationals." There is no legal authority of which the Court is aware (and the plaintiffs provide none) for national-origin protection being given to a native-born individual who is neither Native American (understood to mean a member of a recognized American Indian tribe) nor of foreign ancestry. Neither plaintiff

---

[6] In filing his discrimination charge with the IDHC, Bey identified his national origin as "Aboriginal Indigenous Moor," omitting any reference to Native American origin. Def. Mem., Ex. A, Dkt. # 22-1.

[7] According to the Department of Interior's Bureau of Indian Affairs, there are presently 566 federally recognized American Indian and Alaska Native tribes. *See* Fed. Reg. 47868 Vol. 77, No. 155, Friday, Aug. 10, 2012/Notices (Indian Entities Recognized and Eligible to Receive Services from the Bureau of Indian Affairs). Neither the "Aboriginal Indigenous Native American/Moor" tribe, the "International Indigenous Society Aboriginal Tribal Council," nor the "Aboriginal Republic of North America" are among them. *See also* Decl. of Matthew T. Layman, No. 14 C 7171, Dkt. # 28-1.

[8] If Amen Ra goes forward with the claims that survive BNSF's motion to dismiss, the authenticity of documents he has used to support those claims will properly be the subject of discovery.

has alleged any facts suggesting that he has physical, cultural, or linguistic characteristics that identify him as being of a particular national origin, thus calling for the protection afforded by antidiscrimination statutes. *See, e.g., Salas v. Wisc. Dep't of Corrs.*, 493 F.3d 913, 923 (7th Cir. 2007) (explaining that "appearance" and "accent" are characteristics that could engender discrimination based on national origin"). Without a nonnative country of origin or any characteristic physical, cultural, or linguistic distinctions, the self-professed U.S. nationals of the "Aboriginal-Indigenous Native American/Moor" persuasion do not credibly allege a protected "national origin."

Although the Seventh Circuit has not addressed the particular question of whether "Aboriginal-Indigenous Native American/Moor" is a protected national origin under Title VII, the Sixth Circuit has addressed the claims of individuals asserting comparably obscure national origins,[9] and the Court finds their reasoning persuasive. *See Wilson v. Art Van Furniture*, No. 99-2292, 2000 WL 1434690, *1 (6th Cir. Sep. 19, 2000) ("Grayson El Bey was born in the United States, and presented no credible proof that there is or ever was a country or ethnic group known as the Washitaw de Dugdahmoundyah Empire."). *See also El Bey v. Bredesen*, No. 10-2217, 2010 WL 5069882, at *4 (W.D. Tenn. Dec. 6, 2010 (collecting cases rejecting assertions of citizenship in the "Washitaw Amerindian National Government," "Empire of Washitaw," or "Nation of Washitaw"). Relatedly, the Seventh Circuit and other courts of appeals have looked skeptically at the claims of the Washitaw Nation of Moors to be diverse from defendants based on any kind of foreign citizenship. *See, e..g., Sanders-Bey v. United States*, 267 F. App'x 464, 466 (7th Cir. 2008) (rejecting diversity allegations of plaintiff who was an "Indigenous American National" of the "Washitaw Nation of Muurs," an entity that plaintiff claimed was "entitled to international status but located entirely within the borders of the United States," and noting that the Washitaw Nation "is not recognized by the United States government"); *Allah El v. Avesta Homes*, LLC, 520 F. App'x 806, 809 (11th Cir. 2013) (allegations of status as "sovereigns, Moorish nationals, and indigenous/aboriginal beings of Washitaw Indian descent" inadequate to establish diverse citizenship).

The plaintiffs' national-origin discrimination claims suffer from a second defect as well. Discrimination is an adverse action taken for an improper reason; but, with the exception noted later, these plaintiffs do not allege any action that could be deemed adverse for purposes of Title VII. *See, e.g., Tamayo*, 526 F.3d at 1084 (requiring plaintiff to allege a specific adverse employment action at pleading stage). They each cite the failure to use the appropriate name and/ or citizenship designation ("U.S. national") in company paperwork. But refusing to change identifying information in company records did not, so far as the complaints plausibly allege, create any quantitative or qualitative change in the terms or conditions of their employment, which is the hallmark of an adverse employment action. The Seventh Circuit has categorized

---

[9] The Court understands that both plaintiffs disavow membership in the "Washitaw" tribe of "Aboriginal-Indigenous Native American/Moors," but for purposes of determining whether either is a protected "national origin" within the meaning of Title VII, the purported distinction is immaterial; those who claim to be "Aboriginal Indigenous Native American Moors" of any stripe fail to allege a national origin that may serve as the predicate for a Title VII claim.

materially adverse actions into those actions that affect: "(1) the employee's current wealth such as compensation, fringe benefits, and financial terms of employment including termination; (2) the employee's career prospects thus impacting the employee's future wealth; and (3) changes to the employee's work conditions including subjecting her to 'humiliating, degrading, unsafe, unhealthful, or otherwise significant negative alteration in [her] work place environment.'" *Arizanovska v. Wal-Mart Stores, Inc.*, 682 F.3d 698, 704 (7th Cir. 2012). A materially adverse employment action is more than a mere inconvenience, and does not include "everything that makes an employee unhappy." *See Dass v. Chicago Bd. of Educ.*, 675 F.3d 1060, 1069 (7th Cir. 2012). The plaintiffs allege that they suffered emotional distress, but their do not plausibly allege that it resulted from a materially adverse employment action. The use of a legal name or inaccurate recording of citizenship does not affect an employees' pay or benefits, their career prospects, or their work conditions.

Although Amen Ra's national origin claim rests entirely on allegations that BNSF discriminated against him by failing to revise its records to reflect his preferred name, Bey further alleges that Oakton's discrimination against him culminated in his termination in August 2014. Amend. Cmplt. ¶¶ 29, 32. "Termination of employment is obviously "a significant change in employment status' and thus a materially adverse employment action." *Andrews v. CBOCS W., Inc.*, 743 F.3d 230, 235 (7th Cir. 2014). Despite the fact that Bey alleges no facts at all to support an inference that his national origin had anything at all to do with his termination, that bare claim would ordinarily suffice to save his national origin discrimination claim from dismissal. *See Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1028 (7th Cir. 2013) ((complaint alleging Title VII discrimination "need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her [protected status]") (citing *Tomayo,* 526 F.3d at 1084)). But here, Bey cannot go forward on the basis of a claim that he was terminated discriminatorily because (as is true of any claim of harassment or hostile environment he may be attempting to assert, see note 4, *supra*) he failed to present that claim to the IDHC or EEOC before including it in this lawsuit. That Bey had not been terminated when he filed his original discrimination charge with the IDHC does not excuse him from the requirement to present the claim to the EEOC before filing suit; a new charge was required to be filed if Bey wished to allege discriminatory discharge. *See, e.g.*, *Moore*, 641 F.3d at 258 ("the district court correctly held that Moore cannot complain of discriminatory discharge because he has not alleged such conduct in an EEOC charge"); *Teal v. Potter*, 559 F.3d 687, 693 (7th Cir. 2009) ("Teal should have initiated an additional EEOC complaint after her July termination in order to properly allow the agency to try to resolve the matter and fulfill its obligation to investigate the facts and circumstances related to the July dismissal.")

In Title VII cases, a plaintiff's failure to exhaust administrative remedies is not a jurisdictional requirement but "an affirmative defense, which is the defendant's burden to prove." *Salas v. Wisconsin Dep't of Corr.*, 493 F.3d 913, 921, 922 (7th Cir. 2007). Here, Oakton argues that Bey failed to exhaust his administrative remedies, though it does so only in the context of the harassment claim. But even if Oakton's exhaustion argument is narrowly construed, the failure to exhaust is obvious on the face of the pleadings and therefore appropriate for the Court to address *sua sponte*. *See, e.g., Best v. City of Portland*, 554 F.3d 698, 700 (7th Cir. 2009) ("a district court can raise an affirmative defense *sua sponte* when a valid affirmative defense is so

8

plain from the face of the complaint that the suit can be regarded as frivolous") (internal quotation marks omitted); *Walker v. Thompson*, 288 F.3d 1005, 1010 (7th Cir. 2002) ("it is a general principle of federal civil procedure" that court should dismiss based on affirmative defense of immunity where clear on the face of the complaint); *Kratville v. Runyon*, 90 F.3d 195, 198 (7th Cir. 1996) ("courts, in the interest of judicial economy, may raise the issue of preclusion *sua sponte* even when a party fails to do so"). Bey's complaint states that he filed his employment discrimination charge on March 20, 2013, and that he was fired on August 6, 2014. ¶¶ 24, 29. The right to sue letter attached to his complaint was issued on May 20, 2014. Accordingly, the charge could not have placed Oakton on notice that Bey was challenging his August 2014 termination as discriminatory. Due to this obvious failure to comply with the exhaustion requirement, the discrimination claim cannot proceed to the extent based upon the termination.

### C. Religious Discrimination (Both Plaintiffs)

The plaintiffs' religious discrimination claims are based upon their employers' refusal to stop using their SSNs on employment forms. The plaintiffs are somewhat unclear about what religion they follow (Amen Ra never specifies any religion in his complaint; Bey refers to "Moorish/Islamic religious beliefs"), but they each assert that it violates their beliefs to participate in "any social security program."

Here, the plaintiffs fail to allege any discrimination on account of their religion. First, the plaintiffs fail to plausibly allege facts suggesting that the employer defendants, by using the defendants' SSNs, took any materially adverse action because of the plaintiffs' religion. *See Grossman v. S. Shore Pub. Sch. Dist.*, 507 F.3d 1097, 1098 (7th Cir. 2007) (explaining that in religious-discrimination claims, "[t]he issue is whether the plaintiff's specific religious beliefs were a ground for" an adverse employment action). To the extent that the plaintiffs' theory is that their belief—a belief described in no more detail than simply an aversion to the use of SSNs and social security programs generally[10]—should have been accommodated by their employers, that too is wrong because, as a matter of law, the requested accommodation would impose an undue hardship on the employer. 42 U.S.C.A. §§ 2000e(j), 2000e–2(a).

Courts have regularly held that failing to hire, or declining to finalize the hiring of a candidate who refuses to provide his SSN on religious grounds is not discriminatory because the requirement of providing a SSN is the government's, not the employer's, and because, as a matter of law, it imposes an undue hardship on the employer. *Seaworth v. Pearson*, 203 F.3d

---

[10] Under Title VII, a religious belief is one that is "sincere, meaningful, and occupies a place in the life of its possessor parallel to that filled by the orthodox belief in God." *United States v. Seeger*, 380 U.S. 163, 166 (7th Cir. 1965). *See also Adeyeye v. Heartland Sweeterners, LLC*, 721 F.3d 444, 448 (7th Cir. 2013) ("Thus, a genuinely held belief that involves matters of the afterlife, spirituality, or the soul, among other possibilities, qualifies as religion under Title VII."). The defendants have not challenged whether the plaintiffs have adequately pleaded a sincerely held "religious" belief for purposes of Title VII.

1056, 1057 (8th Cir. 2000); *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 830 (9th Cir. 1999); *Weber v. Leaseway Dedicated Logistics, Inc.*, No. 98-3172, 1999 WL 5111, at *1-2 (10th Cir. 1999); *Baltgalvis v. Newport News Shipbuilding Inc.*, 132 F. Supp. 414, 418, 419-20 (E.D. Va. 2001); *E.E.O.C. v. Allendale Nursing Centre*, 996 F. Supp. 712, 717-18 (W.D. Mich. 1998). This Court sees no difference between these failure-to-hire scenarios (in which case the adverse employment action is much more readily apparent) and the one presented here, where employees who did provide their SSNs claim discrimination because the employer continues to use them as identifying information after being asked to stop. Moreover, there is nothing in either complaint to even hint that the defendant employers took any action because of the plaintiffs' religion rather than out of a desire to maintain consistent personnel records or to conform with requirements of the law. *See, e.g., Thomas v. United States*, 41 F.3d 1109, 1113 (7th Cir. 1994) ("The Internal Revenue Code of 1986 requires employers to withhold federal Social Security and income taxes from the wages of their employees and to hold those taxes in trust for the government.").

In supplemental briefing, the BSNF defendants in Amen Ra's case argue further than the religious discrimination claim must be dismissed because this Court lacks jurisdiction over it pursuant to the Anti-Injunction Act, 28 U.S.C. § 7421. *See* Suppl. Mem., Dkt. # 37 at 1-3. The supplemental brief is based on the ruling of Judge Lee in another case brought by Amen Ra, *Lewis v. BNSF Railway Co.*, 14 C 07173, in which he had alleged that BNSF wrongfully withheld federal income taxes, additional federal taxes pursuant to an IRS levy, and child support from his wages. In that case, Amen Ra was actually seeking an injunction against the collection of taxes, which is precisely what the Tax Injunction Act forbids. Here, on the other hand, BNSF fails to explain how the Tax Injunction Act would apply to Amen Ra's suit for damages based upon the use of the SSN associated with his former name. He has not sought any injunction. *See* Compl., Dkt. # 1 at 12 (seeking "Statutory, Compensatory, and Punitive Damages as well as any other damages seen fit by this honorable court. Total amount $300,000 x 4 = $1,200,000.00"). The Tax Injunction Act has nothing to say about suits for religious discrimination to the extent they are not being used as proxies for tax disputes. Contrary to the defendants' argument, a tax refund action is not a substitute for a damages claim for religious discrimination; the Complaint alleges that using the plaintiff's SSN "to identify him" for *any* reason violates his religious beliefs. As already noted, Amen Ra fails to state a claim of religious discrimination for other reasons, but the Court does not lack subject matter jurisdiction pursuant to the Tax Injunction Act.

### D. Retaliation (Plaintiff Amen Ra)

Plaintiff Amen Ra also brings a retaliation claim, alleging that he was denied a promotion from brakeman to conductor based on the faulty premise that he had not obtained required certifications, although he was in fact qualified. Amen Ra says only that the retaliation was for "complaining of discrimination." As already noted, Amen Ra has failed to state any claim of discrimination, but that does not automatically doom his retaliation claim. Under Title VII, "an employee can engage in statutorily protected activity by complaining about discrimination even if the challenged conduct does not actually constitute discrimination"; the employee simply must

have had "a good faith and reasonable belief that he was opposing an unlawful practice." *Gaines v. K-Five Constr. Corp.*, 742 F.3d 256, 267 (7th Cir. 2014); *see Roth v. Lutheran General Hosp.*, 57 F.3d 1446, 1459-60 (7th Cir. 1995).

The only argument that BNSF sets forth for dismissing the retaliation claim is that the heading to Count III refers to retaliation in violation of 42 U.S.C. § 1981, which protects only against racially motivated retaliation,[11] which Amen Ra does not allege. But that is overly technical reading of the *pro se* complaint. Amen Ra is not required to assert legal theories in the complaint, and therefore, mislabeling a count is not fatal to its substance. *Jajeh v. County of Cook*, 678 F.3d 560, 567 (7th Cir. 2012); *Hatmaker v. Memorial Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010) (Even after *Twombly* and *Iqbal*, "plaintiffs in federal courts are not required to plead legal theories."). Accordingly, a motion to dismiss is proper only when the facts in the plaintiff's complaint, taken as true, do not state a plausible claim under any "recognized legal theory." *See Richards v. Mitcheff*, 696 F.3d 635, 638 (7th Cir. 2012). Retaliation for complaints about national-origin or religious discrimination is unlawful under Title VII; therefore, Amen Ra's invocation of the wrong statute does not doom his claim. He has alleged that he was denied a promotion for which he was qualified because he complained about discrimination. That suffices to state a claim for relief.

BNSF has presented no other grounds for dismissing the retaliation claim, and therefore, Count III survives the motion.

### E. Harassment (Amen Ra)

Finally, in Count IV, Amen Ra claims that he was subject to unlawful harassment when less-senior employees were promoted instead of him and a "+" mark was placed next to his name on a public list to indicate that he could not work as a conductor. Again, the only argument that BNSF makes is that Amen Ra, having invoked § 1981, fails to plead any facts suggestive of harassment based upon race. As the Court already has noted with respect to the retaliation claim, Amen Ra is not held to the statutory label he assigned to his claims; the substance of Count IV is that he endured unlawful harassment, which, in the context of his complaint, he apparently attributes to his status as an Indigenous Native American Moor.

A plaintiff alleging harassment in violation of Title VII must ultimately establish that: (1) his work environment was both objectively and subjectively offensive; (2) the harassment complained of was based on his religion or other category protected by Title VII; (3) the conduct was either severe or pervasive; and (4) there is a basis for employer liability. *See Porter v. City of Chicago*, 700 F.3d 944, 955 (7th Cir. 2012). BNSF chooses not to argue that the complaint fails to set forth sufficient allegations such that liability for harassment is plausible; it does not address whether there are facts suggestive of an offensive work environment or whether two events that Amen Ra describes—being passed over for promotion and being publicly flagged as

---

[11] In any event, because "race" is broadly defined for purposes of § 1981, *see* p. 12, *infra,* BNSF's cursory argument requires further development.

unqualified—are severe or pervasive enough as a matter of law to plausibly constitute "harassment." Accordingly, Amen Ra's harassment claim, which does not fail on the sole ground raised by BNSF, survives the motion to dismiss.

### F. Claims Against Defendant Rose (Amen Ra)

BNSF moves to dismiss all claims against individual defendant Matthew Rose because the complaint fails to set forth any possible basis for the personal liability of Mr. Rose. The Court agrees. Title VII, under which all of Amen Ra's claims are brought, provides for liability by employers, not individuals. "Title VII authorizes suit *only* against the employer. Individual people who are agents of the employer cannot be sued as employers under Title VII." *Passananti v. Cook Cnty.*, 689 F.3d 655, 662 n.4 (7th Cir. 2012).

To the extent that Amen Ra also invokes 42 U.S.C. § 1981, pursuant to which individual liability is possible, *see Smith v. Bray*, 681 F.3d 888, 896 n.2 (7th Cir. 2012), he still fails to state a claim. The defendants argue that Amen cannot invoke § 1981 because he is not alleging discrimination based on "race." Under § 1981, though, "race" is broadly defined "to include identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics." *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 756 (7th Cir. 2006). The Court has already noted that Amen Ra failed to identify any such ancestry or ethnic characteristics; a further problem is that even the broad definition of "race" under § 1981 applies only to those identifiable classes that Congress intended to protect at the time the statute was passed. *See id.* at 756-757. In any event, though, there are no facts alleged in the complaint from which it can be inferred that Mr. Rose, the former CEO, took any adverse action against Amen Ra based on his identity as a tribal member of the Aboriginal Republic of North America / International Indigenous Society. Moreover, Amen Ra did not respond to BNSF's argument regarding Mr. Rose, and he has therefore forfeited any contention that Mr. Rose should remain a defendant.

\* \* \*

For the foregoing reasons, in Case No. 14 C 06655, Defendant Oakton's motion to dismiss [21] is granted and Bey's complaint is dismissed with prejudice. In Case No. 14 C 07171, Defendant BNSF's motion to dismiss [13] is granted as to the discrimination claims and as to all claims against Defendant Rose, but denied as to the retaliation and harassment claims.

Date: September 30, 2015

John J. Tharp, Jr.
United States District Judge