# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SIMEON LEWIS, Estate, Simeon Washa Amen Ra Ex, <br><br> Plaintiff, <br><br> v. <br><br> BNSF RAILWAY COMPANY. <br><br> Defendant. | No. 14-CV-07171 <br><br> Judge John J. Tharp, Jr. |

## MEMORANDUM OPINION AND ORDER

Plaintiff Simeon Washa Amen Ra (formerly known as Simeon Lewis) alleges that his employer BNSF Railroad Company discriminated against him based on his national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. He also alleges that BNSF unlawfully retaliated against him for voicing his complaints about that discrimination. BNSF has moved for summary judgment, arguing that Amen Ra's claims are time barred, administratively unexhausted, and lack merit. In response, Amen Ra argues that summary judgment should be denied pursuant to Fed. R. Civ. P. 56(d) because full discovery has not been completed. For the reasons discussed below, the Court grants BNSF's motion for summary judgment and denies Amen Ra's request for further discovery.

## BACKGROUND

Plaintiff Simeon Amen Ra, who was born in Chicago, IL, self identifies as "a tribal member of the Aboriginal Republic of North America/International Indigenous Society" and a non-citizen

"National" of the United States.[1] Defendant's Amended Statement of Undisputed Material Facts ("DSOF") ¶ 40, ECF No. 130. Amen Ra began working for defendant BNSF Railroad Company in 1993. In February 2010, he asked the company's Human Resource Department to correct its database with respect to his citizenship status (seeking to change the listing from U.S. citizen to U.S. National) and ethnicity (from African American to Indigenous Native American). Compl. ¶ 4. On April 10, 2010, BNSF corrected the ethnicity portion of Amen Ra's file but informed him that it would not change his citizenship status. *Id.* at ¶ 6; DSOF at ¶ 45. Amen Ra repeated his requests at various points over the next three years to no avail. DSOF at ¶¶ 46-51.

In October 2010, BNSF approved Amen Ra's request to transfer from his position as a brakeman working night shifts to a higher paying brakeman position working day shifts. *Id*. at ¶ 2. Two years later in December 2012, Amen Ra submitted a bid for a promotion to a conductor position. On December 24, 2012, BNSF rejected his bid and awarded the job to an employee with less seniority. *Id.* at ¶ 66. BNSF argues that it denied Amen Ra the position because he lacked the requisite certification; Amen Ra staunchly disagrees. It is undisputed, however, that by December 28, BNSF had placed an official restriction on Amen Ra's ability to bid on any other conductor positions in the future. (Apparently, at least according to BNSF, Amen Ra had been incorrectly added to the company's list of certified conductors at some point in the past; the restriction was, according to BNSF, a correction of that mistake.) It also placed a "+" symbol next to Amen Ra's name on a public employee roster to identify him as lacking conductor certification. DSOF ¶¶ 64, 73.

---

[1] Amen Ra also describes himself as "an indigenous inhabitant traveler," "One of We the People," and a "natural man," among other things. Defendant's Amended Statement of Undisputed Material Facts ("DSOF") ¶ 40, ECF No. 130.

On November 4, 2013, Amen Ra filed a charge against BNSF with the Equal Employment Opportunity Commission ("EEOC"), which issued a right to sue letter in June 2014.[2] *Id.* at ¶ 10. Amen Ra subsequently filed a complaint in this Court asserting claims for national origin discrimination, retaliation, and harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2.[3] Specifically, Amen Ra argues that BNSF 1) discriminated against him based on his "citizenship/nationality" by failing to record his citizenship as U.S. National, 2) retaliated against him for making complaints to HR by denying him a promotion, and 3) subjected him to unlawful harassment by restricting his seniority status and placing a "+" mark by his name.[4]

---

[2] Amen Ra first filed an Employment Complainant Information Sheet ("CIS") with the Illinois Department of Human Rights (IDHR) on July 3, 2013. Plaintiff's Response in Opposition to Defendant's Motion to Dismiss Ex. MM2, ECF No. 19. The IDHR cross-files eligible charges with the EEOC. The Seventh Circuit, however, has explained that a CIS is typically ***not*** a formal charge for Title VII purposes because it does not ask for relief. *Carlson v. Christian Bros. Services*, 840 F.3d 466, 467 (7th Cir. 2016). Rather, a CIS is "just a pre-charge screening form, which does not prompt IDHR to notify the employer, launch an investigation, or sponsor mediation between the parties." *Id.*; *see also* IDHR, "Charge Process," https://www2.illinois.gov/dhr/FilingaCharge/pages/intake.aspx (explaining that IDHR staff use the CIS to draft a formal charge which must be signed by the complainant). Amen Ra did not sign the formal charge drafted by the IDHR until November 4, 2013, meaning it was not cross-filed with the EEOC until that time. Exhibits for Defendant's Motion for Summary Judgment, Plaintiff's Deposition 146:18-22 at Exs. 1 and 29, ECF No. 133. Given the fact that the CIS form explicitly stated, "THIS IS NOT A CHARGE," it is not unreasonable to expect even a *pro se* litigant to recognize the distinction. Accordingly, November 4, 2013 (not July 3, 2013) is the date Amen Ra "filed his charge" for the purposes of Title VII.

[3] The complaint also asserted a claim for religious discrimination based on BNSF's alleged refusal to discontinue using Amen Ra's social security number in its company records. That claim was dismissed on BNSF's Rule 12(b)(6) motion. ECF No. 41. Amen Ra's national origin discrimination claim was also dismissed, but the Court subsequently reinstated that claim in response to Amen Ra's motion for reconsideration. ECF No. 51.

[4] Amen Ra filed a similar case at the same time alleging that BNSF unlawfully withheld federal income taxes from his pay. The district court dismissed the case with prejudice and the Seventh Circuit affirmed the dismissal on appeal. DSOF at ¶ 11; *see Lewis v. BNSF Ry. Co.*, 671 Fed. Appx. 386, 387 (7th Cir. 2016).

Discovery began in March 2016. In September, three months after BNSF served its written discovery requests, it filed a motion to compel Amen Ra to respond, which the Court granted. Minute Entry, ECF No. 72. At Amen Ra's request and in acknowledgment of his *pro se* status, however, the Court also extended the discovery deadline on three separate occasions. *See* Minute Entries, ECF Nos. 77, 97, 108. When Amen Ra made a fourth request for an extension on June 27, 2017, the Court instructed him to address remaining discovery issues in his response to BNSF's motion for summary judgment. Minute Entry, ECF No. 138. After some 15 months, discovery finally closed on June 30, 2017, more than five months after the deadline initially set by the Court. By that time, Amen Ra had successfully deposed nine BNSF witnesses. DSOF ¶ 32. Shortly thereafter, BNSF filed an Amended Motion for Summary Judgment. Amen Ra did not respond substantively to any of BNSF's arguments; rather, he filed a response requesting further discovery pursuant to Federal Rule of Civil Procedure 56(d). For the reasons discussed below, that request is denied and BNSF's motion for summary judgment is granted.

## DISCUSSION

### I.   Amen Ra's Rule 56(d) Request for Further Discovery

Courts may deny or delay consideration of a motion for summary judgment if the nonmovant demonstrates that "it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). A party invoking Rule 56(d) must explain why he or she "cannot adequately respond to the summary judgment motion without further discovery." *Deere & Co. v. Ohio Gear*, 462 F.3d 701, 706 (7th Cir. 2006). In support of his request for further discovery, Amen Ra asserts that BNSF knowingly withheld documents and e-mails relating to his qualifications as a conductor in order prevent him from presenting his case.[5] Plaintiff's Response in Opposition to Defendant's

---

[5] Amen Ra's only apparent basis for believing that BNSF engaged in misconduct is its delay in producing responsive discovery on one prior occasion. Specifically, Amen Ra contends

4

Motion for Summary Judgment 4-5, 7-8, ECF No. 139. He also argues that, during depositions taken shortly before the close of discovery, he learned of previously unidentified witnesses who may have knowledge about "the non-correction of certain information in [his] employee file." *Id.* at 8. At base, then, Amen Ra requests more discovery because he believes that BNSF has not produced the complete universe of discoverable information. But the general prospect that there may be more, undiscovered, information to be found is not adequate to warrant a grant further discovery pursuant to Rule 56(d). Discovery is not an unrestricted process and is not designed to unearth every piece of potentially relevant evidence. *See Stevo v. Frasor*, 662 F.3d 880, 886 (7th Cir. 2011) ("Discovery must have an end point."). And to justify additional discovery to fend off a summary judgment motion, the rule requires specifics, not speculation, about both the information that additional discovery is likely to yield and its relevance to the substantive issues raised in the summary judgment motion. Amen Ra's request provides neither. His requests are speculative; he identifies no basis to believe that additional discovery is likely to yield admissible evidence. He fails to explain with any specificity what ***new*** information he expects to obtain or why he is unable to oppose summary judgment without it. Nor does he explain why he cannot adequately respond to BNSF's motion for summary judgment using the information that has been produced.[6]

---

that BNSF purposely waited to produce documents containing new information and disclosing new witnesses until the day he was scheduled to take three depositions, preventing him from adequately preparing. Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment 2-3, ECF No. 139. BNSF disputes this characterization of events, but in any case, the Court already addressed Amen Ra's concerns relating to this incident at a status hearing on May 16, 2017. At that time, it granted him a discovery extension and leave to depose new witnesses. *See* Minute Entry, ECF No. 108.

[6] Indeed, it appears that the discovery he seeks pertains only to his retaliation claim, but he provides no substantive response even to BNSF's arguments as to the other claims he has asserted.

The requirements of Rule 56(d) are particularly apt where, as here, there has been an ample period in which to conduct discovery. This is not a case, as Amen Ra characterizes it, in which he has been "railroaded" into summary judgment by a premature motion. This Court provided Amen Ra ample time to develop his case—discovery lasted some 15 months and the Court granted Amen Ra three extensions of time—but every deadline was met with a request for additional time to expand the search for information; discovery simply begat requests for additional discovery in hopes of locating someone who would corroborate Amen Ra's allegations. Because Amen Ra's response fails to "show . . . for specified reasons, [that he] cannot present facts essential to justify [his] opposition," Fed. R. Civ. P. 56(d), the Court is not inclined to further extend discovery in this case for yet another iteration of this process.

There is, moreover, an additional reason for denying Amen Ra's request for further discovery. As discussed below, the undisputed facts show that Amen Ra's claims are either time barred or administratively unexhausted, and he does not argue that further discovery would produce any evidence to the contrary. *See Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 628 (7th Cir. 2014) (denial of Rule 56(d) request affirmed where areas that the party needed to "further explore" through discovery did not bear on court's reason for granting summary judgment). Accordingly, Amen Ra's request is denied. Discovery will remain closed and consideration of BNSF's motion for summary judgment, to which the Court now turns, will not be delayed.

## II.     BNSF's Motion for Summary Judgment[7]

To succeed on a motion for summary judgment, the movant must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, courts "review the evidence in the record in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *NES Rentals Holdings, Inc. v. Steine Cold Storage, Inc.*, 714 F.3d 449, 452 (7th Cir. 2013).

Title VII, under which Amen Ra asserts his claims, prohibits employment discrimination based on race, color, religion, sex, or national origin, and forbids employers from retaliating against an employee for engaging in statutorily protected activity, such as complaining about

---

[7] As noted above, Amen Ra's response to BNSF's summary judgment motion did not address the substance of BNSF's arguments. In light of the denial of his Rule 56(d) request, and his pro se status, the Court has considered whether it would be appropriate to afford Amen Ra a further opportunity to respond substantively, based on the evidence that has been developed to date, in the event that he mistakenly assumed that he would have an opportunity to respond substantively after the Court addressed his Rule 56(d) motion. No such conclusion, or accommodation, is warranted, however; Amen Ra moved to stay his response to the summary judgment motion pursuant to Rule 56(d) and the Court expressly denied that motion and instructed Amen Ra to make any arguments about the need for additional discovery in his response to the summary judgment motion. The Court made clear that it wanted to evaluate the need for the additional requested discovery in the context of Amen Ra's substantive responses to the motion. *See* ECF No. 138 ("Any remaining discovery issues should be addressed in the context of Plaintiff's response to the summary judgment motion and in accordance with Fed. R. Civ. P. 56(d)."; ECF No. 142 ("to the extent that the plaintiff believes that additional discovery is required in order to respond to the summary judgment motion, those arguments should be addressed in Plaintiff's response, so that the court can assess the significance (or lack of significance) of the additional discovery sought by Plaintiff."). It should have been plain to Amen Ra, then, that his "response" to the summary judgment motion should have included the substance of Amen Ra's positions and an explanation of why the requested additional discovery was necessary to support that position, but his response provided no such information. In view of the foregoing, the Court concludes that permitting Amen Ra an additional opportunity to respond substantively to BNSF's motion is not justified. This conclusion is reinforced by the fact that Amen Ra has made no argument that additional discovery is required to address BNSF's statute of limitations and exhaustion defenses, which, as discussed below, are meritorious.

discrimination. 42 U.S.C. §§ 2000e-2(a)(1), 2000e-3(a). It also sets forth a precise filing framework which requires claimants to complete an administrative process before filing in federal court. An Illinois claimant must file a Title VII discrimination charge with the EEOC, the entity responsible for enforcing federal employment discrimination laws, "within three hundred days after the alleged unlawful employment practice occurred." § 2000e–5(e); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002). For discrete actions (*e.g.*, termination), the period begins to run "on the date that the employee is notified of the adverse employment decision." *Williamson v. Indiana Univ.*, 345 F.3d 459, 463 (7th Cir. 2003). Hostile work environment charges (*i.e.*, charges based on the cumulative effect of repeated acts of harassment), however, are timely so long as they are filed within 300 days of **any** act making up part of the charge. *Nat'l R.R. Passenger Corp*, 536 U.S. at 118.

Amen Ra argues that that BNSF violated Title VII in three ways: first, by discriminating against him based on his national origin by refusing to correctly categorize him as a non-citizen "U.S. National;" second, by retaliating against him for making complaints to Human Resources by denying him a promotion; and third, by harassing him by identifying him as unqualified to be a conductor on a company-wide employee roster. For the reasons discussed below, the Court finds that BNSF is entitled to judgment as a matter of law on these claims and grants its motion for summary judgment.

### A. Discrimination Claim

The Court turns first to Amen Ra's claim that BNSF discriminated against him based on his national origin by failing to correct his citizenship status in his personnel file, which Amen Ra contends resulted in incorrect withholdings of taxes from his pay. According to his complaint, Amen Ra knew by April 10, 2010 that BNSF would not change his citizenship status. Compl. ¶ 6.

8

Accordingly, he had 300 days from that date to file a charge with the EEOC. Because Amen Ra waited to file until November 4, 2013, more than three years after he learned of the alleged adverse employment action, his claim is time barred.

Further, and although Amen Ra does not make the argument, there is no prospect that either the doctrine of equitable tolling or the doctrine of continuing violations could save Amen Ra's claim. Equitable tolling "may extend the statute of limitations if, despite all due diligence, a plaintiff cannot obtain the information necessary to realize that he may possibly have a claim." *Beamon v. Marshall & Ilsley Tr. Co.*, 411 F.3d 854, 860 (7th Cir. 2005). A plaintiff cannot be said to lack the necessary information if "a 'reasonable' person in the plaintiff's position would have been aware of the possibility that he had suffered an adverse employment action because of illegal discrimination." *Jackson v. Rockford Hous. Auth.*, 213 F.3d 389, 396 (7th Cir. 2000). The continuing violation doctrine, on the other hand, extends the statute of limitations where "the employer's decision-making process takes place over a period of time, making it difficult to determine the actual date of the allegedly discriminatory act." *Jones v. Merchants Nat. Bank & Tr. Co. of Indianapolis*, 42 F.3d 1054, 1058 (7th Cir. 1994). In such a situation, the statute of limitations begins to run on the date the plaintiff knows the discriminatory decision has been made. *Freeman v. Madison Metro. Sch. Dist.*, 231 F.3d 374, 381 (7th Cir. 2000).

In his deposition, Amen Ra testified that initially he "wasn't sure" why BNSF refused to change his citizenship status. Exhibits for Defendant's Motion for Summary Judgment, Plaintiff's Deposition 88:3 at Exs.1 and 29, ECF No. 133. But by his own account, he suspected that BNSF had discriminatory motives by November 15, 2012 at the very latest when, after making repeated requests up the chain of command, he received an e-mail from HR Director Duncan Brown firmly denying his request. *Id.* at 69:21; Compl. Ex. CC. Because Amen Ra essentially concedes that he

9

was at that point "aware that [national origin] discrimination could be one possible explanation" for BNSF's refusal to update his citizenship status, the latest conceivable date he had to file a charge with the EEOC would have been 300 days later, on September 11, 2013. He did not file an EEOC charge, however, for more than seven weeks after that date. The doctrine of equitable tolling does not, therefore, save his claim.

The continuing violation doctrine provides no help to Amen Ra either. Any requests Amen Ra made after receiving Duncan's email (if he made any after that point) would be irrelevant for tolling purposes because the "denial of a repeat request for previously denied accommodations does not constitute a new discriminatory act or make the previous denial part of a continuing violation." *Mendez v. City of Chicago*, 03 C 8182, 2004 WL 2980598, at *4 (N.D. Ill. Dec. 22, 2004), *aff'd sub nom. Mendez, Adm'r of Estate of v. City of Chicago*, 174 Fed. Appx. 342 (7th Cir. 2006); *see also Williamson*, 345 F.3d at 463 ("The decision not to reverse an adverse employment decision is not a fresh act of discrimination."). Because Amen Ra waited until November 4, 2013—354 days after the November 15, 2012 e-mail—his discrimination claim would be untimely even if the Court were to invoke the doctrines of equitable tolling or continuing violations. Accordingly, BNSF's motion for summary judgment is granted with respect to Amen Ra's discrimination claim.[8]

---

[8] As an aside, BNSF also argues that Amen Ra's discrimination claim was not administratively exhausted because he failed to reference national origin discrimination in his EEOC charge. The Court notes, however, that it explicitly rejected that argument when ruling on Amen Ra's Motion to Reconsider, explaining that referring to citizenship instead of national origin "did not leave BNSF in the dark about what conduct of BNSF's he was challenging." Order on Plaintiff's Motion to Reconsider 3, ECF No. 51.

B. **Retaliation Claim**

The Court grants BNSF's motion for summary judgment as to Amen Ra's retaliation claim for similar reasons. On December 22, 2012, Amen Ra submitted a bid through BNSF's electronic timekeeping system seeking to be promoted to an open conductor position. DSOF ¶ 67. On December 24, 2012, he learned that BNSF had denied his bid and awarded the position to a more junior employee. *Id.* at 66; Plaintiff's Dep. at 107:16. BNSF claims that it denied Amen Ra's bid because he was not a certified conductor. DSOF ¶ 60. Amen Ra maintains that he was certified, and that BNSF denied him the promotion in retaliation for making complaints to HR.[9] Resolution of that dispute is not material, however, because failures to promote are discrete acts; after being notified on December 24, 2012, that he was not going to be promoted, Amen Ra had until October 21, 2013 (300 days after being told that his bid was rejected) to file an EEOC charge. *Pruitt v. City of Chicago, Illinois*, 472 F.3d 925, 927 (7th Cir. 2006). Amen Ra did not file until November 4, 2013, so his retaliation claim is untimely.

Amen Ra did not respond substantively to BNSF's statute of limitations argument, but the Court notes that Amen Ra testified in his deposition that he initially attributed BNSF's rejection of his bid to a "company mix-up" and did not suspect discrimination or retaliation until months later. Plaintiff's Dep. at 145:8-11. That testimony, however, is at odds with the fact that, by the time he submitted his CIS to the IDHR in July 2013, Amen Ra was claiming that the company had retaliated against him by erroneously reporting his wages to the IRS. *See* Plaintiff's Response in Opposition to Defendant's Motion to Dismiss Ex. MM2, ECF No. 19 (July 5, 2013 letter from IDHR). Plainly, by that time Amen Ra suspected the company of retaliatory animus based on his

---

[9] Amen Ra states in his deposition that he believes the denial of the promotion was discriminatory as well as retaliatory. Plaintiff's Dep. 96:6-7. This distinction is immaterial for timeliness purposes.

11

complaints of discrimination. But even accepting his testimony as true, Amen Ra's formation of a subjective belief that he was being retaliated against does not determine whether his assertion of a retaliation claim was timely. *Jackson,* 213 F.3d at 397 (courts not permitted "to consider subjective explanations for failing to file suit timely"). The standard is objective, and based on his allegations, Amen Ra should have been aware that he had a possible claim as soon as he was denied the promotion. As reference, the Seventh Circuit held in *Hendricks v. Illinois Dept. of Human Services* that an African-American woman had enough information to conclude that she had a possible claim on the day her employer hired a white woman instead of promoting her. 80 Fed. Appx. 489, 491 (7th Cir. 2003). Here, Amen Ra had even more information at his disposal: he maintains that he had long been qualified as a conductor and he knew that BNSF had awarded the position to a more junior employee despite his alleged qualifications and seniority. And more significantly, Amen Ra had known since April 2010—some two and one-half years earlier—that BNSF had repeatedly refused to update his employee file, which, he acknowledges, had already sparked his suspicions of discriminatory and retaliatory animus. Further to this point, Amen Ra did not identify any other incident or event that convinced him that BNSF had refused to promote him in retaliation for his was retaliating against him; rather, he testified that over time it simply became "clear to me that this was all done in regards to retaliation for me complaining about my citizenship and ethnicity status." Plaintiff's Dep. at 146:9-11. The statute of limitations starts running not when it becomes clear that a party is liable but when there is a reasonable basis to suspect that there is a claim and given the facts allegedly available to Amen Ra at time he was denied the promotion, a reasonable person would have considered retaliation as one possible explanation for the company's failure to promote him to conductor. Accordingly, his retaliation claim is time barred.

BNSF, to be sure, did not merely deny him that one promotion; it also placed a restriction on his seniority status, preventing him from applying for other conductor positions in the future. DSOF ¶ 63. BNSF claims that it did so because it had only discovered that Amen Ra was not conductor certified after he entered his bid. According to BNSF, Amen Ra had been mistakenly added to the conductor certified list, so the restriction was merely a correction of that mistake. *Id.* at ¶ 62. Amen Ra, on the other hand, believes it was retaliatory or discriminatory, and it is not clear from the record when exactly he discovered his restricted status, although it was some point after he learned that he was not given the promotion. But even if that aspect of the claim is timely, it still fails because the entire retaliation claim is administratively unexhausted. The Seventh Circuit has explained that to sue in federal court, a Title VII claimant must preserve his or her claim in the initial EEOC filing; claims not explicitly included can be pursued only if they "fall within the scope" of the included charges. *Ezell v. Potter*, 400 F.3d 1041, 1046 (7th Cir. 2005). "Normally, retaliation and discrimination charges are not considered 'like or reasonably related' to one another." *Swearnigen-El v. Cook Cty. Sheriff's Dep't*, 602 F.3d 852, 864–65 (7th Cir. 2010). And here, Amen Ra did not mention either the denied promotion or the restriction of his seniority status anywhere in his EEOC filing. Exhibits for Defendant's Motion for Summary Judgment Ex. 34, ECF No. 135. Because his EEOC charge, which speaks only to BNSF's failure to update his employee file, does not "describe the same conduct" as the retaliation claim in this case, Amen Ra is barred from pursuing it.

Amen Ra testified that he did not include the retaliation claim in his initial filing because someone from the IDHR told him that it "had to play out" through BNSF's internal appeals process before it would investigate. Plaintiff's Dep. 172:17-19. But that only reinforces the point that Amen Ra did not exhaust his administrative remedies before filing a complaint in this Court,

because he could not have "reasonably expected" that an investigation into retaliation would grow from his original charge.[10] *Ajayi v. Aramark Bus. Services, Inc.*, 336 F.3d 520, 527 (7th Cir. 2003). To the contrary, the IDHR explicitly told him that retaliation would ***not*** be investigated. The Court therefore grants BNSF's motion for summary judgment as to the retaliation claim.

## C. Harassment Claim

In his last claim, Amen Ra asserts that BNSF harassed him by, beginning on December 26, 2012, placing a "+" symbol next to his name on a public employee roster to reflect his restricted status. Compl. ¶ 27; Plaintiff's Dep. 187:21; Exhibits for Defendant's Motion for Summary Judgment, Employee Roster at Ex. 1 to Ex. 25, ECF No. 135. BNSF does not dispute doing so. DSOF ¶ 76. Rather, it argues that the harassment claim, like the others, is time barred. And rightly so; Amen Ra did not file a charge with the EEOC until more than 300 days after he became aware of the "+" symbol. That the symbol appeared on the roster each day until March 2014 does not extend the filing deadline merely because Amen Ra felt harmed by it every day. *See Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 840 (7th Cir. 2014) (explaining that the 300-day period does not restart with each new day the harm is experienced). Further, the "+" symbol was simply a representation of BNSF's recent decision that he was ineligible for certain duties, and the Seventh Circuit has stated that "[r]eassignment of duties . . . are discrete acts. Nothing about their duration or repetition changes their nature in such a way that a cumulative violation could arise." And in

---

[10] Amen Ra apparently filed a subsequent charge with the EEOC in July 2015, after his conductor status was restored, alleging that after he filed the instant lawsuit, BNSF unlawfully docked his pay, threatened to discharge him, and wrongfully disciplined him. The EEOC issued a right to sue letter in February 2016. Exhibits for Defendant's Motion for Summary Judgment Ex. 15, ECF No. 133. He then filed a third charge in in August 2016, alleging retaliation and discrimination. *Id.* at Ex. 16. These charges are similarly deficient in that they do not reference either the failure to promote or his restricted status; they appear to allege only violations occurring after the filing of this lawsuit.

any case, these facts are not mentioned in the EEOC charge, rendering Amen Ra's harassment claim administratively unexhausted for the same reasons described above. *Id.* BNSF's motion for summary judgment with respect to Amen Ra's harassment claim, like the others, is granted.

\* \* \*

BNSF has demonstrated that Amen Ra's claims are either untimely or administratively unexhausted, so the Court grants its motion for summary judgment in full. Judgment will be entered in its favor.

Date: January 3, 2019

John J. Tharp, Jr.
United States District Judge